IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARION BASFORD,                  :
            Plaintiff            :
            v.                   :  Case No. 3:06-21-KRG-KAP
JOANNE B. BARNHART, COMMISSIONER :
OF SOCIAL SECURITY,              :
            Defendant            :

Report and Recommendation

Recommendation

Marion Basford appeals from the unfavorable decision of the Commissioner of Social Security, denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33.  The Appeals Council denied review on December 6, 2005, Tr. 7-9, thus making the ALJ's decision of August 26, 2005, Tr. 14-21, the basis for the Commissioner's decision.  Because no substantial evidence supports the ALJ's findings that Basford was not disabled for the period in question, I recommend that the defendant's motion for summary judgment, docket no. 16, be denied, the plaintiff's motion for summary judgment, docket no. 12, be granted in part, and the decision of the Commissioner vacated and remanded.  Benefits should be awarded from the alleged onset date, January 26, 2004, through August 17, 2005.  The portion of the Commissioner's decision denying benefits after the latter date should be vacated and the matter remanded for further proceedings, including the development of evidence to determine whether Basford was disabled after that date.

Report

The court's duty in reviewing the Commissioner's denial of disability benefits is to determine whether "substantial evidence," 42 U.S.C.§ 405(g), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's findings that Basford was not disabled. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999). The definition of disability for purposes of disability benefits requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A). It is the disability, not merely the impairment, which must last or be expected to last twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

My responsibility is to examine the whole record, not simply to confirm the existence of those pieces of evidence relied upon by the ALJ, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003)(citation omitted); Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986), and I have therefore read the entire record, whether cited by counsel or not, to determine whether the ALJ's decision was supported by substantial evidence.

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520.  See Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The first four steps are not in dispute: (1) Basford is not working and has not worked since the date he injured his back while shoveling snow on January 26, 2004; (2) he has severe impairments, namely low back pain as a result of lumbar disk disease and several surgeries to treat the resulting conditions; but (3) those impairments do not meet the requirements of the disability listings.  The ALJ noted that Basford also complained of acid reflux, high blood pressure, and depression, but did not find these conditions to be severe impairments because they were well controlled with medication and did not affect Basford in a more than minimal way.

At the fourth step, the ALJ found that (4) Basford was limited to unskilled work at the light exertion level and so could not return to his relevant past jobs, which as performed by Basford were skilled or semi-skilled medium or heavy work.  At the fifth and final step, the ALJ found that (5) Basford retained the residual functional capacity to do the work necessary in a limited range of light exertion jobs.

Basford was born on January 9, 1954, and was 51 years old at the time of the ALJ's decision.  Tr. 19.  Basford lives in a house with his retired older brother.  Tr. 334-35.  He is a high school graduate with approximately two years of additional education

3

at the college level, Tr. 333, and had a steady work history as a UPS package deliverer, construction company office manager, and as a computer analyst or information technology director for a county social service agency and a regional social services agency in Western Pennsylvania.  Tr. 19.

Since 1999, Basford has been treated by his family physician, David G. Baer, M.D., for hypertension, hyperlipidemia, gastroesophageal reflux disease, and exogenous obesity.  Tr. 105. Obesity is not a current problem because Basford has lost approximately 40 pounds since the onset date of his low back pain, and see Tr. 333-34; Baer's office notes are at Tr. 116-26, 267-78. Baer also prescribed fluoxetine (the generic name for Prozac), 20mg/day, beginning October 25, 2004, to treat Basford's symptoms of depression.   According to Baer's notes of December 20, 2004, Basford's symptoms of depression were significantly improved, and Baer made no further referrals for treatment of depression.

Basford has a lengthy history of back problems, with a partial diskectomy in March 1984, and three subsequent surgeries to remove additional portions of the disc.  Tr. 200.  A decade later, on October 31, 1994, Henry M. Shuey, M.D., noted that Basford had "acute sciatica, left, tilted right forward for pain relief, with positive straight leg raising, left," and that an MRI showed "a disk herniation at left L5-S1, in the prior operated space . . . a paracentral disk herniation, bulging, with a lateral stenosis

4

present at L4-5, left." Tr.107. Shuey recommended that Basford

proceed with "lumbar exploration at left L5-S1, with lumbar

diskectomy and probable lumbar laminoforaminotomy at left L4-5."

Seven years after that, Basford's cervical problems again

led him to consider surgery. An MRI performed on November 1, 2001,

showed:

1. Asymmetric posterior bony spur, moderate right paracentric disc
extrusion compressing right anterior thecal sac, moderate right
neural foraminal narrowing C6-C7.
2. Desiccation with minimal narrowing of intervertebral disc space
C6-C7.

Tr. 171, 197.   On November 19, 2001, Michael Moncman, D.O.,

performed a C6-C7 anterior cervical diskectomy on Basford, with

fusion and fixation, in order to address what was diagnosed as a C6-

C7 right herniated nucleus pulposus causing right cervical

radiculopathy. Tr. 198-99. Basford undertook physical therapy

following his surgery. Tr. 200-02. The physical therapist observed

that Basford "continues to present with deficiencies that are

indicative of status post C6-C7 cervical spinal fusion and low back

dysfunction[,] . . . [but] his lumbar spine has responded well to

therapy as he has near normal active range of motion and strength in

his low back and bilateral lower extremities." Tr. 201. Basford

maintained employment throughout this period.

Two years later on January 26, 2004, Basford testified, he

injured his lower back while shoveling snow. Tr. 341. An MRI

performed on February 5, 2004, showed left paracentric disc bulging

at the L4-5 level, "degenerative facet hypertrophy, prominent ligamentum flavum causing mild central spinal canal stenosis, left neural foraminal narrowing L4-5" as well as "[m]oderate Type II end plate disc degeneration with narrowing of intervertebral disc space L5-S1." Tr. 155. Nerve conduction studies and an electromyogram (EMG) were performed on February 11, 2004, for the lower pack injury and to assess Basford's complaints of numbness for the previous two years in his right arm and right first and second fingers. The reports revealed:

1.  Electroneurodiagnostic evidence of a right sided median mono-neuropathy at about the level of the wrist, as seen in carpal tunnel syndrome.

2.  Above symptoms are superimposed over a right C5 root irritation without evidence of acute denervation, consistent with the patient's previous surgical history.

Tr. 317-18.

Moncman again examined Basford on February 12, 2004. Moncman noted that Basford's "[l]umbar ranges of motion [were] diminished in all planes by complaints of pain" and that he "describe[d] trigger points bilaterally at L4 through S2." Tr. 181. Moncman's impression was cervical and lumbar strain. Basford testified that he undertook physical therapy for this for approximately six weeks, Tr. 342, without relief. Moncman's notes of March 2, 2004, indicate that therapy did help Basford's neck but did not help Basford's severe headaches. Tr. 179. On April 8,

6

2004, Michael J. Drass, M.D., examined Basford at Baer's request.

Drass observed:

There is decreased sensation left lateral calf and dorsum of the
left foot as compared to the right side.  Reflexes are 2+ in the
right Achilles, 1+ left in the patella.  Absent Achilles.  Strength
reduced in the left leg as compared to the right and flexion and
extension of the knee and plantar flexion and dorsiflexion.
Straight leg raise in both seated and supine position produces leg
pain and back pain.  Right side, right leg is negative.  He does
have stiffness of the lumbar spine limiting flexion only to about 25
to 30 degrees with complaints of pain in back.  Occasional extension
also produced back pain.  Back itself actually was nontender.

Tr. 111.  Drass' diagnoses were L4-L5 and L5-S1 degenerative disk

disease and left lumbar radiculitis.  On April 22, 2004, Drass gave

Basford an epidural steroid injection at the L4-L5 transforaminal

level.  Tr. 109.  This did not relieve Basford's symptoms, and he

again began considering surgery.  Tr. 343.

Peter C. Gerszten, M.D., a neurosurgeon, examined Basford

on June 9, 2004, and noted:

On physical examination, he is a 50-year-old, well-developed man who
presents in no acute distress.  He is right handed.  His gait was
moderately antalgic.  Lumbar flexion was performed to 40 degrees,
extension and rotation are within normal limits.  He was able to toe
and heel walk with left leg pain.  There was evidence of left L4-5
bony tenderness and paraspinal muscle tenderness.  Left straight leg
raise test was positive at 40 degrees.  There was evidence of
sensory loss, left great toe.  Motor examination was 5/5 with the
exception of left lower extremity being 4+/5 and left extensor
hallucis longus being 4-/5.  Deep tendon reflexes were 2+.

Tr. 219.  Gerszten completed a form that day for Basford's employer,

certifying that Basford was totally disabled for an indefinite

period of time, but that his disability was not permanent and his

return to full duty at any time would depend on the outcome of

surgery.  Tr. 175; see also Tr. 176.  On August 16, 2004, Gerszten

and Brian G. Harbrecht, M.D., performed two surgical procedures, an

L4-L5 microdiskectomy and an L5-S1 anterior lumbar interbody fusion.

Tr. 225-26; Tr. 228; Tr. 231-32.

Just three weeks after surgery, on September 8, 2004,

Mashukur R. Khan, M.D., performed a disability evaluation, Tr. 239-

48, and made these findings:

ROM:  See attached chart [see Tr. 247-48.]  Having difficulty with
the right hip and the knee on flexion.  [Straight leg raising] was
unable to lift past 30 degree[s] on the left because of weakness of
the leg.

NEUROLOGIC EXAM:  Power is 3+/5 in lower extremities bilaterally.
And. +5/5 in both upper extremities bilaterally.

SENSORY:  Numbness in the left foot.  Cranial nerves 2-12 intact.
Babinski negative.

REFLEXES:  Right knee 1+; left knee 0.   2+ at biceps/triceps
bilaterally.
                                . . .

GAIT:  Patient brought a cane and is currently using a cane.
[Without] a cane patient was able to go a few yards but slight
limping to the left, but unable to walk on heel to toe [without]
support.

Tr. 243.  Khan's diagnosed no anxiety or depression, noted that

Basford had intact memory and judgment and average intelligence, Tr.

241, and concluded with a finding of "chronic back pain with

radiculopathy, [status post] multiple back surgeries as well as neck

surgery for neck pain." Tr. 244.  Khan recommended that Basford

continue on pain medication with physical therapy/rehabilitation as

tolerated.  Tr. 244.  Khan also completed a medical source statement

8

of Basford's ability to perform work-related physical activities.
Tr. 245-46.   In the statement he indicated that in an eight hour
workday Basford could occasionally lift and carry 2-3 pounds, but
that he was unable to lift or carry anything heavier "due to back
impairments and recent surgery." Tr. 245.  Khan also indicated that
Basford could stand and walk 1 hour or less, that he used a cane,
that he had to alternate between sitting and standing, and that when
sitting he had to shift around in his chair because of back pain.
Khan reported that Basford could sit only 15-20 minutes during a
workday (whether this period was meant to be continuous or in total
was not clear), had moderately limited ability to push and pull with
his arms because of his recent back surgery, and was severely
limited in his lower extremities because his left foot was
completely numb and he had right leg pain from his hip to his lower
leg.  Khan noted that because of his back pain Basford could bend
occasionally, but that he could never kneel, stoop, crouch, or
climb.  As a result, Khan noted that Basford should avoid moving
machinery, vibration, temperature extremes, and wetness.  Tr. 245-
46.  Khan did not offer opinions on whether Basford's condition
would improve as the date of the surgery receded or about Basford's
long term prognosis.

Basford underwent a CT lumbar myelogram on September 27,
2004.  The myelogram showed at the L4-L5 level:

a moderate broad based bulge that extends laterally.  It is slightly
more prominent to the left of the midline.  There is also post op

9

changes at this level on the left, posteriorly.  Some of the soft
tissue bulge may represent some component of scarring on the left
where it is slightly more prominent.  This causes mild compromise at
this level.

Tr. 309.   The myelogram at the L5-S1 level showed the results of

the fusion with no significant compromise of the exiting nerve root

on the right.

        Gerszten examined Basford on October 1, 2004, and noted:

His gait is with a right leg limp.  His abdominal and lumbar
incisions have healed nicely with no evidence of infection.  Right
straight leg raise test was positive.  There is evidence of sensory
loss at his left lateral foot.  Motor examination was 5/5 with the
exception of left lower extremity being 4/5 and 4-/5 at left ankle.
Deep tendon reflexes were 2+ with the exception of left patellar
being 1+.  Review of his lumbar myelogram performed on September 27,
2004, shows no evidence of right-sided compression.

Tr. 262.   Gerszten also noted hypersensitivity in the S1 dermatome

at the fourth and fifth toes on the right foot, but stated that he

was "somewhat bewildered as to the cause of Mr. Basford's pain,

which points to an S1 radiculopathy."

        On October 13, 2004, Basford again underwent an EMG,

performed by a physiatrist, Hugh D. Newman, D.O.  Tr. 258.  Newman

reported the following:

1.    Electroneurodiagnostic evidence suggestive of, but not
conclusive for a right S1 root irritation by decreased recruitment
in the S1 myotome, although right H-reflex was intact and within
normal limits.
2.    No evidence of peripheral polyneuropathy nor peripheral
entrapment syndromes.  Clinical correlation required.

        Gerszten examined Basford again on October 15, 2004, and

noted that his back and leg pain had markedly improved since his

August 16, 2004 surgery.  Tr. 260.  Gerszten stated that Basford

"had a new right S1 radiculopathy since surgery," but that he was unsure of the etiology of the pain.  Gerszten referred Basford back to Baer for nerve root blocks.

In January, 2005, Drass injected Basford at the right L5 foraminal nerve root; he performed a second nerve root block on March 10, 2005.  Tr. 285.  Drass believed that these nerve blocks were unsuccessful and recommended that Basford return to Gerszten for re-evaluation.  Tr. 282.  Gerszten saw Basford on April 29, 2005, and recommended a dorsal column stimulator.  Tr. 319.  On July 22, 2005, Drass inserted a spinal cord stimulator electrode.  Tr. 321.  Drass reported that Basford kept the unit on overnight and slept better[1].

A state disability reviewer (counsel for the Commissioner asserts that the physician is R. Aneja, see Tr. 26, but the handwriting of the reviewer, Tr. 249-56, is not clear enough to confirm that) completed a residual functional capacity assessment on or about September 15, 2004, concluding that as of August 17, 2005, one year after the most recent surgery, Basford would have the ability to lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours, and sit for a total of 6

---

1.  Basford submitted a September 7, 2005 progress note from Drass to the Appeals Council, explaining why Basford had decided not to have a permanent stimulator implanted.  Tr. 325.  Because the Appeals Council denied review, that is not part of the record available to determine whether the ALJ's decision is supported by substantial evidence.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir.2001).

hours in an 8 hour workday, would have no further limitations on his ability to push or pull, and would retain the ability to balance, stoop, kneel, crouch, and crawl frequently, with occasional climbing.  Tr. 251-53.  The findings are check marks in boxes on the RFC form; the explanatory comments, where they are legible at all, consist of Basford's height, weight, and other numerical data.

Basford testified before the ALJ that he is able to bathe and dress himself and prepare simple meals, that he drives once a week, and shops for groceries occasionally, but does no housework. Tr. 352-53.  His daily activities are sedentary: he watches television, sends and receives e-mail, reads the newspaper, does crossword puzzles, pays his bills, goes out to dinner, and visits or entertains family and friends.  Tr. 354-56.

Basford testified that he lies down on a couch or recliner to watch television to get relief from the pain in his legs.  Tr. 358-59.  His legs burn all the time and throb at night, and hurt if he is on his feet for a long time, but pain does not affect his focus or concentration.  He uses his cane when he leaves his house. Tr. 353-59.  He is no longer able to golf.  Tr. 356.  Basford also testified that he has high blood pressure, elevated cholesterol, and acid reflux.  These conditions are controlled with medication.  Tr. 350-51.  Basford reported that Baer diagnosed depression in October 2004, and prescribed Prozac, which helped him "somewhat."

A vocational expert classified Basford's prior work as UPS package delivery person as medium, low semi-skilled work; his work as an office manager with some material control responsibilities as heavy, skilled work; his work as a computer system analyst as medium, higher semi-skilled work; and his work as an information technology director as medium, semi-skilled work. Tr. 360-62. The ALJ asked the vocational expert whether a hypothetical individual of Basford's age, education, and work experience would be able to perform any of these jobs if he were restricted to performing light exertion work that consisted of only simple, routine, and repetitive tasks and required only simple work related decisions. Unsurprisingly, the vocational expert stated no. The ALJ asked if there were any jobs such a hypothetical person could do with the added limitations that the hypothetical person should avoid all climbing with ropes, ladders, and scaffolds; all crawling; exposure to cold temperatures, extreme wetness or humidity; hazards such as dangerous machinery and unprotected heights; and more than occasional crouching, climbing stairs, pushing and pulling with both lower extremities, and use of foot pedals unless operation of the pedals requires less than five pounds of force. The hypothetical person also could only do work that allowed for a sit/stand/walk option of no more than five steps away from the work station, not to exceed one minute in length, and for no more than five times in the period of one hour. Tr. 362-64. The vocational expert testified

13

that with such limitations a person could still do unskilled entry-level jobs at the light exertional level, such as order filler, receiving clerk, admission health aid, and stock clerk. Tr. 364-65. There were hundreds of thousands of such jobs in the national economy.  The ALJ then asked the vocational expert to assume the hypothetical individual were to have more than five unexcused absences per year and time off task in excess of ten percent.  Tr. 37-38.  Again, the vocational expert unsurprisingly reported such an individual would not be employable.  Tr. 366.

Basford argues that the ALJ's decision should have been favorable to him once the ALJ considered Social Security Ruling (SSR) 83-12, which advises that an individual who is unskilled and requires a sit/stand option at will may be precluded from performing most light and sedentary jobs.  The applicable part of SSR 83-12 reads as follows:

1.  Alternate Sitting and Standing

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.  (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range or work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand

14

with a degree of choice.  If an individual had such a job and is
still capable of performing it, or is capable of transferring work
skills to such jobs, he or she would not be found disabled.
However, most jobs have ongoing work processes which demand that a
worker be in a certain place or posture for at least a certain
length of time to accomplish a certain task.  Unskilled types of
jobs are particularly structured so that a person cannot ordinarily
sit or stand at will.  In cases of unusual limitation of ability to
sit or stand, a [vocational specialist] should be consulted to
clarify the implications for the occupational base.

This does not compel a finding of disability in the instant case.

Reading it in context, the Ruling directs the ALJ to consult a

vocational expert to clarify the implications for the occupational

base in cases where a claimant's residual functional capacity is

compatible with the performance of either sedentary or light work

except for unusual limitations on the ability to sit or stand.  Here

the ALJ, after determining that Basford had the residual functional

capacity to perform light work with an at will sit/stand option,

consulted a vocational expert who concluded that there were jobs

available for a person with Basford's characteristics who required

light work with a sit/stand option.

        Basford also argues that the ALJ could not reasonably find

him not disabled after stating at the hearing:

There is absolutely no question that you have certainly been
disabled for over a year.  Okay.  So you know, that -- the issue of,
of whether you're entitled to any disability at all is, is already
resolved.  Okay.  The issue of how long it's going to be is another
question.

Tr. 373.  While certainly the written decision was a disappointment

to Basford, the ALJ's decision is his written findings and

conclusions, not his oral remarks at the hearing, and must be

evaluated on its own, not on its consistency with the ALJ's tentative or preliminary impression of the merits.

The dispositive question on appeal ultimately is whether the ALJ's hypothetical to the vocational expert adequately contained the functional limitations caused by Basford's nonexertional impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552-53 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). Under Ramirez, the hypothetical posed to the vocational expert must contain all the limitations the ALJ does find; under Chrupcala, substantial evidence must support the choice of the ALJ to reject limitations the ALJ does **not** include in the hypothetical.

The ALJ's hypothetical to the vocational expert did not fully accept the limitations testified to by Basford or posited by Khan. The Commissioner argues that the lack of a disability opinion or work restrictions (but see tr. 175-76, in which Gerszten opines that Basford is totally, but not permanently, disabled) by any treating physician supports the ALJ's decision to find that Basford had the RFC to perform light work. docket no. 17, Defendant's Brief, at 14, citing Tr. 19. None of the treating physicians prepared any opinions on Basford's residual functional capacity, but there is nothing in their evaluations or surgical reports, none of which were prepared as RFCs, which would suggest that an RFC evaluation was even sought from them. There is nothing in them that supports a finding that Basford was able during this period to do

16

even sedentary work.  The absence of evidence of disability falls on the claimant, who bears the burden of proof of disability, but there is ample and uncontradicted evidence in this record, which the ALJ accepted as "reasonably [] expected," Tr. 18, to produce the limitations Basford testified to.  The ALJ found nondisability not because he disbelieved Basford's symptoms, but because his weighing of the medical judgments led him to conclude that these "medically determinable impairments," Tr. 18, did not preclude a very specific set of work conditions at the light exertional level.  However, the only medical evidence in the record for the ALJ's findings that Basford was capable of this particular range of light work (as opposed to an RFC at the less than sedentary level that Khan found) was the RFC prepared by the record reviewing physician who prepared the September 15, 2004 report.  The ALJ could rightly discount Khan's opinion because it was offered so soon after surgery and would not be as authoritative as a report prepared farther in time from the surgery, but the ALJ could not discount Khan's opinion for that reason and then uncritically rely on the record reviewer' opinion prepared that same week.  Yet that is exactly what the ALJ did.  See Tr. 19 ¶1 (Khan's RFC assessment is afforded little weight because Khan's "examination was performed less than one month after the claimant's surgery..."), compare ¶4 ("The state agency medical consultants who evaluated the evidence concluded the claimant would be able to perform light work activity with occasional climbing as

17

of August 17 2005. ...  The undersigned notes the state agency
physicians were not afforded the opportunity to review the medical
evidence received subsequent to their determinations.  However, the
conclusion the claimant is not precluded from all work activity is
in agreement with the state agency.")

A record reviewing physician's evaluation of medical
records is entitled to some weight, 20 C.F.R.§ 404.1527(f), but this
evaluation, even if the sketchy comments in support of the check
marks were originally legible, was seriously misused.  As can be
seen from the above quote, the check marks of the record reviewer
became the opinions (plural) of medical consultants (plural) and
state agency physicians (plural).   The ALJ admits that the
reviewer's opinion was based only on partial evidence because the
reviewer was "not afforded" (by the Commissioner) an opportunity to
review follow up reports on Basford's new S1 radiculopathy (and in
doing so the ALJ implicitly acknowledges that the post operative
history of S1 radiculopathy represents evidence of worsening
disability, not of improvement), but explains the decision to give
that opinion more weight than Khan's contemporaneous opinion because
its "conclusion" "is in agreement with the state agency."  That is
a tautology, not an explanation: the opinion of the reviewer **is** the
opinion of the state agency.  The reasoning here is circular (or
worse, because the only other interpretation of the ALJ's statement
is "I credit the reviewer's opinion because that opinion is an

opinion of nondisability." I do not suggest that the ALJ meant that the credibility of an expert opinion on a disputed issue was being evaluated on the basis of which party it favored.)  The ALJ erred in swelling the solo voice of a reviewer into a chorus of "state agency physicians" who, despite being contemporaneous with Khan, did not have "their" opinion"s" discounted for the same proximity in time to Basford's surgery that the ALJ used to discount Khan's opinion. That solo voice, subject to the same scrutiny its contemporary received, is not substantial evidence in support of a finding that Basford could do light work.

The vocational expert's testimony that a substantial number of jobs existed which a hypothetical person could perform was therefore not a substantial basis for finding the actual Basford not disabled.   See Chrupcala v. Heckler, 829 F.2d at 1276 (the vocational expert's testimony is substantial evidence if the hypothetical posed by the ALJ contains all of the claimant's disabilities supported by the record.)  Even based on the records reviewer's assessment that as of one year after surgery Basford would be capable of light work, Basford was disabled from his onset date until August 2005.  Whether Basford was disabled after that date or is disabled now is an open question as to which further evidence should be taken.

19

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 13 April 2007

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF